DowNet, Judge,
delivered the opinion of the court:
The facts are all stipulated and very fully state the case in that respect, resolving it into a consideration, construction, and application of pertinent taxing acts.
*941 The defendant thus states the question involved: “ Is cash payment of munition taxes imposed by section 301 of the revenue act of 191G for the calendar years 1916 and 1917, the payment of capital-stock taxes imposed by section 1000 (2) (1) of the revenue act of 1918 for the fiscal year July 1, 1918, to June 30, 1919, within the meaning of section 1004 of the the act of 1918 ? ”
The plaintiff contends that this statement is not accurate and amends it to read: “Is the application of the credit given by the proviso to section 407 of the revenue act of 1916 a cash payment by reason of the cash payment of munitions taxes imposed,” etc. (following thereafter the defendant’s statement of the question) ? In effect there is apparently no material difference in the two statements, and the real issue is, by the two statements, fairly well defined.
Several paragraphs of different revenue acts are involved, and it is perhaps well to quote them.
In the revenue act of 1916, act of September 8, 1916 (39 Stat. 756 at 781), under “Title III, Munition Manufacturer’s Tax,” it is provided:
“ Seo. 301. (1) That every person manufacturing [muni-cions described in detail, including those manufactured by plaintiff] shall pay for each taxable year, in addition to the income tax imposed by Title I, an excise tax of twelve and one-half per centum upon the entire net profits actually received or accrued for said year from the sale or disposition of such articles manufactured Avithin the United States: Provided, however, That no person shall pay such tax upon net profits receded during the year nineteen hundred and sixteen derrred from the sale and delivery of the articles enumerated in this section under contracts executed and fully performed by such person prior to January first,, nineteen hundred and sixteen.
“ (2) This section shall cease to be of effect at the end of one year after the termination of the present European war, which shall be evidenced by the proclamation of the President of the United States declaring such war to have ended.”
In the act of October 3, 1917 (40 Stat. 300, at 308), it is provided, in section 214, as follows:
“ Subdivision (1) of section three hundred and one of such act of September eight, nineteen hundred and sixteen, *942 is hereby amended so that the rate of tax for the taxable year nineteen hundred and seventeen shall be ten per centum instead of twelve and one-half per centum as therein provided.
“Subdivision (2) of such section is hereby amended to read as follows:
“ ‘(2) This section shall cease to be of effect on and after January first, nineteen hundred and eighteen.’”
In the revenue act of 1916, first above quoted from, it is provided, in “Title IV. Miscellaneous taxes,” under subhead “ Special taxes,” as follows (39 Stat. 789) :
“Sec. 407. That on and after January first, nineteen hundred and seventeen, special taxes shall be, and hereby are, imposed annually, as follows, that is to say :
“ Every corporation, joint-stock company or association, now or hereafter organized in the United States for profit and having a capital stock represented by shares, and every insurance company, now or hereafter organized under the laws of the United States, or any State or Territory of the United States, shall pay annually a special excise tax with respect to the carrying on or doing.business by such corporation, joint-stock company or association, or insurance company, equivalent to 50 cents for each $1,000 of the fair value of its capital stock and in estimating the value of capital stock the surplus and undivided profits shall be included: Provided [immaterial portion omitted].
$ # $ $ $
“Provided, That for the purpose of this tax an exemption of $99,000 shall be allowed from the capital stock as defined in this paragraph of each corporation, joint-stock company or association, or insurance company: Provided further,That a corporation, joint-stock company or association, or insurance company, actually paying the tax imposed by section three hundred and one of Title III of this act shall be entitled to a credit as against the tax imposed by this paragraph equal to the amount of the tax so actually paid: And provided further, That this tax shall not be imposed upon any corporation, joint-stock company or association, or insurance company not engaged in business during the preceding taxable year, or which is exempt under the provisions of section eleven, Title I, of this act.
* Üí # iji ❖
“ Sec. 408 (last paragraph). Every person who carries on any business or occupation for which special taxes are imposed by this title, without having paid the special tax therein provided, shall, besides being liable to the payment *943 of such special tax, be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not more than $500, or be imprisoned not more than six months, or both, in the discretion of the court.
* * * * *
“ Sec. 409. That all administrative or special provisions of law, including the law relating to the assessment of taxes, so far as applicable, are hereby extended to and made a part of this title; and every person, firm, company, corporation, or association liable to any tax imposed by this title shall keep such records and render, under oath, such statements and returns and shall comply with such regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may from time to time prescribe.”
In the revenue act of 1918, act of February 24, 1919 (40 Stat. 1057), it is provided in “Title X. Special Taxes” (p. 1126), as follows:
“ Sec. 1000. (a) That on and after July 1, 1918, in lieu of the tax imposed by the first subdivision of section 407 of the revenue act of 1916—
“ (1) Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included.
íj; H* Hi H* ❖
“Sec. 1004. That if the tax imposed by section 407 or 408 of the revenue act of 1916 for the fiscal year ending June 30, 1919, has been paid by any person subject to the corresponding tax imposed by this title, collectors may issue a receipt in lieu of special tax stamp for the amount by which the tax under this title is in excess of that paid or payable and evidenced by stamp under the revenue act of 1916. Such receipt shall be posted as in the case of the special-tax stamp, as provided by law, and with it, within the place of business of the taxpayer.
“ If the corresponding tax imposed by section 407 of the revenue act of 1916 was not payable by stamp, the amount paid under such section for any period for which a tax is also imposed by this title may be credited against the tax imposed by this title.
“Sec. 1005 (40 Stat. 1129). That any_ person who carries on any business or occupation for which a special tax is imposed by sections 1000,1001, or 1002, without having paid *944 the special tax therein provided, shall, besides being liable for the payment of such special tax, be subject to a penalty of not more than $1,000 or to imprisonment for not more than one year, or both.”
Under “Title XIV. General Provisions,” (p. 1149), it is provided :
“Sec,. 1400. (a) That the following parts of acts are hereby repealed, subject to the limitations provided in subdivision (b) :
“ (1) The following titles of the revenue act of 1916:
“ Title I (called ‘ Income Tax ’) ;
“ Title II (called ‘ Estate Tax ’);
“ Title III (called ‘ Munitions Manufacturers’ Tax ’), as amended;
“ Title IV (called ‘ Miscellaneous Taxes ’). [This includes section 401 capital-stock tax.]
“ (2) [is immaterial.]
* * * * ;¡;
“Sec. 1400.(b) [1] Such parts of acts shall remain in force for the assessment and collection of all taxes which have accrued thereunder, and for the imposition and collection of all penalties or forfeitures which have accrued and may accrue in relation to any such taxes, and except that the unexpended balance of any appropriation heretofore made and now available for the administration of any such part of an act shall be available for the administration of this act or the corresponding provision thereof: Provided, That except as otherwise provided in this act, no taxes shall be collected under Title I of the revenue act of 1916 as amended by the revenue act of 1917, or Title I or II of the revenue act of 1917, in respect to any period after December 31, 1917: Provided further, That the assessment and collection of all estate taxes and the imposition and collection of all penalties or forfeitures which have accrued under Title II of the revenue act of 1916 as amended by the act entitled ‘An act to provide increased revenue to defray the expenses of the increased appropriations for the Army and Navy and the extensions of fortifications, and for other purposes,’ approved March 3, 1917, or Title IX of the revenue act of 1917, shall be according to the provisions of Title IV of this act. In the case of any tax imposed by any part of an act herein repealed, if there is a tax imposed by this act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this act takes effect under the provisions of this act.”
*945 The construction to be put upon the statute particularly in question may be aided by a consideration of conditions existent theretofore, as to which it seems there is no room for controversy.
The revenue act of 1916 imposed both a munitions tax and a capital-stock tax, to both of which the plaintiff was subject, but Congress evidently did not intend that they should be paid concurrently to the full amount of each, for it was provided in section 407, imposing the capital-stock tax, that a corporation paying the tax imposed by section 301, the munitions tax, should be entitled to a credit as against the tax imposed by section 407, its capital-stock tax, to the amount of the munitions tax so actually paid. It may be pertinent to observe that this provision did not in terms relieve the corporation from obligation to pay its capital-stock tax, but provided in terms for a “ credit ” as against its capital-stock tax to the amount of the munitions tax paid. The difference, not so apparent in this case, becomes so if we consider a possible case wherein the munitions tax paid is less than the capital-stock tax.
In the instant case the plaintiff actually paid during the calendar year 1917, a capital-stock tax to the amount of $195,815.17. A munitions tax for the calendar years 1916 and 1917 was paid, subsequent, it is understood, to the payment of the capital-stock tax to the amount of $1,897,-858.58, and thereafter said capital-stock tax of $195,815.17 was refunded upon a claim therefor filed by the plaintiff.
The period here involved is from July 1, 1918, to June 30,1919, the fiscal year 1919. On September 30,1918, within the required time, plaintiff duly made, on the form prescribed for that purpose, its capital-stock tax return, under the provisions of section 407 of the act of September 8, 1916, for the period herein involved, viz, July 1, 1918, to June 30, 1919, inclusive (Finding VII), showing the amount of its capital-stock tax as $142,610, and it returned as the “Amount of munitions tax, if any, paid under Title III of act of September 8, 1916, since making last return ” as $1,897,-785.79. This was the amount of the munitions tax above referred to on account of the payment of which the capital- *946 stock tax paid in 1917 to the amount of $195,815.71 was refunded, but it was stated at the full amount, it seems, because it was paid after its last preceding capital-stock tax return and the prescribed form so called for it.
Upon this return the plaintiff was not required to pay in cash and did not so pay any capital-stock tax for the period in question. Section 301, subdivision (2) of the act of September 8, 1916, had been amended so as to provide that the munitions tax provided for by that section should cease to be of effect on and after January 1, 1918, and thus there was in effect no munitions tax during this period. But by an amended regulation of the Treasury Department, Bureau of Internal Revenue, promulgated August 9, 1918, it was provided as follows:
“Aet. 10. Credit of mumtion manufacturer’s tax — From the tax payable as above determined, the amount, if any, of the munition manufacturer’s tax imposed by Title III of the act of September 8, 1916 (no longer in effect since January 1, 1918), actually paid by the corporation since making its last previous return hereunder is deductible.”
# # sf: #
Thus the situation in 1918, continuing until the passage of the act of February 24, 1919. The munitions-tax payment of $1,897,785.70 had been construed by the bureau as entitling the plaintiff to the refund of the $195,815.71 of capital-stock tax paid for the periods up to and including June 30, 1918, and, being sufficient in amount, it had also been regarded as a proper basis for credit as against the capital-stock tax for the period in question and the plaintiff had not been required to separately pay that tax. There could have been no controversy but for the subsequent passage of the act of February 24, 1919, and particularly because of the fact that section 1000(a) levying a capital-stock tax was made retroactive to July 1, 1918, thus making it cover the period here in question and, by its retroactive effect, antedating the return and settlement set up in Finding VII.
After the passage of this act the Commissioner of Internal Revenue required the plaintiff to file an amended return for the period in question, which it did under protest, upon which the commissioner assessed against the plaintiff a capital-stock tax of $160,108, which it paid, also under *947 protest, and on July 9, 1920, it filed a claim for refund which, on January 11, 1922, was disallowed by the commissioner.
In said act of February 24, 1919, the capital-stock tax was fixed at $1 for each $1,000 of value instead of 50 cents .as theretofore, and the exemption was reduced from $99,000 -to $5,000, and anticipating, no doubt, that taxes of the same character assessed under section 407 of the revenue act of 1916 would already have been paid, made provision for that ■contingency and, as to taxes not payable by stamp, it was provided that—
“ If the corresponding tax imposed by section 407 of the ■.revenue act of 1916 was not payable by stamp, the amount paid under such section for any period for which a tax is also imposed by this title may be credited against the tax imposed by this title.”
By this recital of the situation, justified to the end that it may be clearly and logically presented, we are brought to the real question for determination. The plaintiff contends, in substance, that because under section 407 of the revenue act of 1916 it was entitled to a credit as against its •capital-stock tax of the full amount thereof at the 50-cent rate, by reason of the payment of a munitions tax in excess of that amount, it is entitled to treat that amount of •capital-stock tax as an “ amount paid under such section ” within the meaning of the quoted paragraph, and to be ■credited therewith on its capital-stock tax levied under the .act of February 24, 1919. Its contentions may in some re.spects seem broader than this, but as finally submitted they .are thus limited. And it may properly here be said that we do not find basis for the statement that the plaintiff is asserting a right to a “ continuing credit.” The defendant, controverting this contention, asserts, in substance, that the payment contemplated by the paragraph last quoted must have been an actual payment of capital-stock tax in cash. It is not necessary to discuss the applicability of this paragraph to the instant case. The tax levied by section 407 of the revenue act of 1916 was a “ corresponding tax ” to that ..levied by section 1000 of the act of February 24, 1919. The *948 difference in rate and exemption is, in this respect, immaterial.
While the defendant’s brief discusses the question very ably, it is noticeable that in referring to the operation of the revenue act of 1916 and the payment in cash of munitions taxes it speaks of being relieved (italicized in brief) from the payment of capital-stock tax, and also it speaks of “this relief from paying capital-stock taxes, or more particularly a provision by Congress that capital-stock taxes need not be paid (as in brief) where the amount of munitions taxes paid exceeds the amount of capital-stock taxes due.”
In construing statutes we, of course, seek their meaning, but we must seek the meaning of the words used, and not the meaning of an assumed paraphrasing. We find no provision in the act referred to “relieving” from the payment of a tax, nor do we find where Congress provided that the tax in question “ need not be paid.” And especially do we find no provision that capital-stock taxes “ need not be paid when the amount of munitions taxes paid exceeds the amount of capital-stock taxes due,” nor would, we expect to find it, for Congress was of necessity providing equitably as between all taxpayers of the same class, and it provided, for a •“ credit ” which embraced cases where the munitions taxes paid were less than the capital-stock taxes as well as those where they were more. This class of taxpayers were subject to both taxes, and Congress did not intend to “ relieve” one taxpayer of this class and not another, and therefore, with wisdom and with judgment in the selection of its phraseology, it used the all-embracing word “credit.” The word has a plain, generally accepted meaning, and we see no reason for giving to it any other. When the creditor, in return for something of value received from the debtor, be it money or what not, gives him a “ credit ” on his indebtedness, the debtor is in fact “relieved,” because of the credit, from the payment of that much of his debt, but-there is no justification for saying that to that extent the creditor has forgiven his debtor.
The term “ credit ” in its usual sense, as applicable to mutual transactions between two parties, is necessarily as *949 sociated with the word “ debit,” and while perhaps not necessarily so, the application of a credit usually implies a preexisting indebtedness which by the application of a credit is reduced in amount or paid in full. The plaintiff was subject to a capital-stock tax, it was required to make its return with reference thereto, and when that tax was assessed against it it was debited with the amount thereof. If not a munitions manufacturer, then, so far as these provisions aré concerned, it must discharge the debit by payment. Congress presumably regarded the double burden upon munition manufacturers as too heavy and provided for a “ credit ” against its capital-stock tax of an amount equal to the munitions tax paid. Assume the munitions tax to be less than the capital-stock tax, as the language of the act indicates it would be, and the simple transaction is a credit as against a debit, in this case a credit to the extent of the cash payment, and to that extent, as in ordinary transactions, a payment of that much of the capital-stock tax, leaving the remainder due. There is no system provided by Congress different from ordinary debit and credit transactions, and resort to any other seems unjustified.
There was nothing out of the ordinary in handling, the matter of these taxes under the act of 1916 before the passage of the act of February 24, 1919, and it seems but following common practice to say that, whatever name be now applied to the transaction, the commissioner allowed the plaintiff the credit to which it was entitled under the law, for we must assume that he proceeded according to the law, and that such credit, in effect at least, paid the plaintiff’s debt on account of capital-stock taxes. And there was no apparent difference between the status of this plaintiff as to its capital-stock tax and a nonmunition manufacturing corporation which had paid its capital-stock tax in cash., In both cases the indebtedness on account of such taxes was discharged.
In the paragraph of section 1004, act of February 24, 1919, quoted above, it is first said that “ If the corresponding-tax imposed by section 40T of the revenue act of 1916 was not payable by stamp,” suggesting the thought that as to munition manufacturers capital-stock tax, it was not payable in cash, if such manufacturer had paid a munitions *950 tax, but was payable, in whole or in part by a credit of all of the requisite amount of the munitions tax which was paid in cash.
Assuming that corporations not engaged in the manufacture of munitions had paid their capital-stock tax under section 154, they were to be given a credit for the amount paid, as against the tax imposed by the new act, this procedure-being required and meeting the situation because the new act doubled the rate over that which had been paid under the old act. But under the old act there was no difference in the status of taxpayers, whether the capital-stock tax had been, paid in cash, or, in case of a munition manufacturer, by a. credit, and the Bureau of Internal Revenue had apparently treated the credit as a discharge of the obligation just the same as a payment in cash. And if for its purposes, then,, it found it proper to treat the capital-stock tax as paid or discharged by the authorized credit, it is difficult to see by what process it can be concluded that the amount so paid is not the “ amount paid as those words are used in the second paragraph of section. 1004, for it is to be borne in mind in construing those words that Congress did not say paid in cash, but did say “paid under such section,” referring to section 401, providing for the munitions-tax credit as against the corresponding tax imposed by that section. That act recognized the right to pay or discharge, using the two words in the same sense, by a credit; and if for thApurpose of that act a credit was to be deemed a payment to that extent, there is no apparent reason why, under the relating language, the same construction should not apply under the later act.
There is yet' for consideration another provision of the act of February 24, 1919. By section 1400(a) certain parts of the revenue act of 1916 were re|>ealed, including “Title III (called ‘ Munition Manufacturers’ Tax ’) as amended,” and “T-itle IV (called ‘Miscellaneous Taxes'),” included in which is section 407, but the repeal is expressly “ subject to the limitation provided in subdivision (b).” Subdivision (b) provides, among other things, that “such parts of acts shall remain in force for the assessment and collection of ail taxes which have accrued thereunder,” etc.
*951 There must have been a purpose in these words, and apparently that purpose was to preserve not only to the United States but also to the taxpayer such rights with reference to the assessment and collection of accrued taxes as existed under those titles, applicable in this particular case to Title IY and particularly to section 407 imposing a capital-stock tax and providing for a munitions-tax credit.
The situation is apparently somewhat entangled because section 1000(a) of the act of February 24, 1919, imposes retroactively to July 1, 1918, a capital-stock tax already imposed by section 407 of the revenue act of 1916, but the purpose seems evident. Congress knew that before the passage of the later act a capital-stock tax had already accrued under section 407. It did not in the later act repeat all the phraseology of the former but used the words “every domestic corporation ” instead of more extended phraseology meaning the same thing, and, of importance in determining the situation, it assessed the tax at $1 for each $1,000 of value “ in lieu of the tax imposed by the first subdivision of section 407 of the revenue act of 1916,” after which it specifically kept in force section 407 for the assessment and collection of all taxes which have accrued thereunder. The tax levied by the two sections was the same. They were what is referred to as “corresponding” taxes. The difference was in rate and exemption.
If the Commissioner of Internal Revenue had allowed his adjustment of taxes accrued under section 407 to stand as already made and had assessed an additional tax under the later act equivalent to the increase in rate and the reduction in exemption the result, we believe, would have been as intended by Congress. We believe that, taken alone, the second paragraph of section 1004, act of February 24, 1919, entitled the plaintiff to a credit of the amount of its capital-stock taxes assessed under section 407, revenue act of 1916, and paid by a credit of its munition taxes, paid in cash, as the “ amount of corresponding tax imposed by section 407 ” and “ paid under such section,” but when in connection therewith we consider the language of section 1400(b), quoted and discussed above, the purpose of the legislation seems apparent.
*952 The amount of the recovery is for consideration. The plaintiff sues for “ $160,108, or' so much thereof as is in excess of capital-stock taxes for which it was liable for the year ending June 30, 1919, with interest thereon from February 13,1920,” but concedes in argument, as we understand, that it is not entitled to recover any of the additional capital-stock taxes provided for by the act of February 24, 1919, in excess of those assessed under section 407 of the revenue act of 1916, and that in the computation the exemption of $5,000 applies. If perchance this does not correctly state plaintiff’s final contention, it does, we think, fix the limits of plaintiff’s recovery. The result does not harmonize entirely with what has been said in discussing the principles involved, for the capital-stock tax assessed under section 407 as against which 'a munition-tax credit was allowed amounted to $142,610. But in making an assessment under the act of February 24, 1919, the commissioner revalued the capital stock, cutting the valuation down very materially, computed an exemption of $5,000, instead of $99,000 and assessed and collected $160,108. Assuming that he might properly have assessed an additional tax to the extent of the increase in the rate and that as to-such additional tax the munitions-tax credit did not apply, the amount of the recovery would be $80,054, with interest at 6 per cent per annum from February 13, 1920, and for that amount we have directed judgment.
Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur.
Geaham, Judge, took no part in the decision of this case.